We will hear argument first this morning in Case 18-956, Google v. Oracle. Mr. Goldstein. Mr. Chief Justice, and may it please the Court, the merger doctrine resolves the copyrightability question in this case. Oracle has a copyright to the computer code in Java SE, but not a patent. That means that the public, not Oracle, has the right to Java SE's functions. And Oracle cannot leverage its copyright to create patent-like rights. Specifically, under the merger doctrine, there is no copyright protection for computer code that is the only way to perform those functions. Here, Java software developers have the right to use certain commands to create applications for Google's Android smartphone platform. But to work, the commands require Google to reuse an exact set of declarations from Java SE, like a key fits into a lock. Because there are no substitutes, Oracle is impermissibly claiming the exclusive right not merely to what the declarations say, but also to what the declarations do. That is not a copyright, it is a patent right. With respect to fair use, the long-settled practice of reusing software interfaces is critical to modern interoperable computer software. Here, reusing the minimally creative declarations allow the developers to write millions of creative applications that are used by more than a billion people. But those policy questions are almost academic, because the issue is not whether this court would find fair use. The standard of review asks a much narrower question, whether the jury could reasonably find fair use. Oracle now obviously regrets its demand that the jury weigh all the evidence and decide fair use in a general verdict that contains no subsidiary findings. No previous court ever held that only a court may decide fair use. It is so fact-bound that no prior appellate court ever overturned a fair use verdict. This uniquely contested case should not be the first. Today, you will hear three lawyers present legal arguments for an hour. In 2016, the jury heard the starkly conflicting testimony of almost 30 witnesses and reviewed roughly 200 exhibits over two and a half weeks. This case perfectly illustrates, as this court recently reiterated in Georgia versus Public Resource, that fair use, quote, is notoriously fact-sensitive and often cannot be resolved without a trial. Mr. Goldstein, let's say someone copies the headings in your brief, and they copy the organization in your brief, which sections you put first, and how you organize them. Would your argument say that that's perfectly fine so long as they write their own text? No, sir. A computer program is entirely different. And in addition, you wouldn't have the issue of the merger doctrine. The issue here is that it is not possible to provide the functionality that we have the right to with Android without recreating that structure. No, I understand your merger argument is different, but I don't think that was the question I asked. Sir, in terms of whether you could simply recreate the headings from a brief or a book and recreate the structure, not unless it was necessary to do so, and that's what's true here. Well, if you're talking about necessary to do so, and again, you're forcing me back to the merger doctrine, and that's fine, but the only reason that there's only one way to do it is because Sun and Oracle's product expression was very successful. There were a lot of ways to do it when they did it. And the fact that the programmers really liked it and that's what everybody used, it seems a bit much to penalize them for that. We don't intend to penalize them, sir, but our point is that in the language of Section 102B, they may well have come up with a novel method of operation. They may have created one, but they don't get the rights to it. That is a patent-like right. I suppose, just as your point illustrates, in Baker v. Selden, you could have said, well, Mr. Selden came up with a very innovative form of bookkeeping, and other people could have used a different one, but that was not enough to give him a copyright. I don't think it's a patent right. I mean, it's their particular expression, and you say the only way for you to say what you want to say in the new material that you provide is to copy theirs. That's not a patent. That's copyright. Sorry. Our point is this. We have the right to provide a certain functionality, to make a computer do something. That right is given to us under Section 102B. If there were other ways for us to do it, that would be another matter. But because there is only one way, then there is no copyright protection. But in all events, even if you took the perspective that copyright looks at the options that were available to Oracle to begin with, clearly Fair Use looks at it from the other end of the telescope. And there was enormous creativity that is unleashed by the ability to reuse the Declaration of Independence. Before you get into Fair Use, you say that was the only way for you to do it. But cracking the safe may be the only way to get the money that you want, but that doesn't mean you can do it. If it's the only way, the way for you to get it is to get a license. Your Honor, I think that analogy would help us. Because if you get a patent on the safe, you may well be able to keep us out. But if you write a book about the safe, about how to crack safes, that doesn't give you the exclusive right to do it. What about the combination to the lock on the safe? Can you copy that just because somebody else has it and that's the only way to get in? Well certainly, if you write a book about how to unlock the combination of something, unlock the combination of a lock, that doesn't give you the exclusive right to the lock. All it does is it shares the knowledge about how to crack safes or open locks. What copyright wants is for people to be able to use that knowledge. And that's what we want here too. Thank you, counsel. Justice Thomas? Yes, thank you, Mr. Chief Justice. Mr. Goldstein, you seem to rely quite a bit on Section 102. Why don't we rely on Section 101, which is more specific with respect to computer programs? Your Honor, Section 101 tells us that Oracle holds a copyright in Java SE as a computer program. Then Section 102B, what it tells us is that, okay, that copyright does not extend to any method of operation in Java SE. And what the merger doctrine tells us, that's called the idea-expression dichotomy. And then what the merger doctrine tells us is that if there is only one way to provide the method of operation of Java SE, you cannot get a copyright on that expression. So our point here is that the method of operation of Java SE is a combination of commands by the developers and the declarations in Java SE. If there are no substitutes, if we cannot use anything else, then you would be giving Oracle effectively patent rights by preventing us from reusing the declarations. So at what point should we determine the merger, whether or not there is merger when Oracle or Sun develops this program or when you decide to use it? The latter. And that's the teaching of Baker v. Seldin and the text of 102B. What that tells us is that when you copyright something and you publish it, you disclose it to the public. Seldin disclosed his system of bookkeeping, the dual entry system. What the court said is once that's published, then the public has the right to use it. So to here, once Oracle published Java SE, people in the public, developers, companies like Google, have the right to create their own versions of it that would provide the same functionality. Then the question was, is there any way to do it without reusing the expression of the original? When as here there is not, there is no copyright protection. You know, someone could argue, though, that look, if a team takes your best players, the football team, that the only way that those players could actually perform at a high level is if you give that team your playbook. I don't think anybody would say that is right. I'm sorry. No, go on. Our point isn't that we can't do it at a high level. Remember, everyone agrees that we have the right as Google to write a computer program that provides all the same functionality as Java SE. And in Android, we wrote new and better versions that were more suitable for use in a modern smartphone. So it's not like we are trying to take someone's fan base or their football players or anything else. Oracle doesn't want a fan base. It effectively wants prisoners. It wants the people who use its work, the developers, only to be able to use it with Java SE. That's not what a copyright gives you. You don't get a fan base with a computer program the way you do with J.K. Rowling's novels. Well, actually, my concern was having to turn over the playbook. But let's go to fair use briefly. In the time that I have, how would you distinguish Harper? Harper and Row is a case in which the district judge made findings, and this court said, when there are established findings, and the court, not a jury, is going to resolve fair use, it can be the appellate court or the district court. Here you have the opposite. You have a general jury verdict. There are no subsidiary findings whatsoever. The jury was asked to and properly instructed to weigh all the evidence and the fair use factors. You can't unpack it in nearly the same way you could with a court in Harper and Row. So is that because of the fact finder or because it was a general verdict? Both. Both of those are critically important here. It's not the court that is assigned the responsibility for deciding fair use under Rule 39C and the Seventh Amendment. It is the role instead of the jury. And you would have to construe everything in our favor, which the federal circuit disavowed doing. Thank you. Justice Breyer? Well, I have a question for each side that I'm trying to answer in my own mind. For you, I'd like to ask this. I write down, as a computer, I have a computer in front of me, and I put java.lang.math.max for N410, okay? And that calls up a certain program, which you did not copy, the ones it calls up. Which is setting the switches of the computer. Well, the words I just spoke also call up a particular program, i.e., a set of computer switches that will get me to the program that does a particular thing. Well, it's a computer program, isn't it? And you can copyright computer programs. And so what's the difference between java.lang, etc., which sets switches on the computer, and any other program that sets switches on the computer? That's our point, Your Honor, and that is... I know that's your point. That's what I want you to say, clearly enough, so I can understand it, which is pretty tough. Okay. So there are two parts to these shortcut programs. There's what we call the implementing code that actually does the program. It provides the function there. It will produce the larger of two numbers. Oracle agrees that if there's only one way to write that, we can reuse that implementing code. But it can't explain why the same isn't true for the code that you mentioned, which is the combination of the calls written by the developer and the declarations that appear in Android and Java SE. If there is only one way to do it, then you give someone a copyright on that that's exclusive. Then you are saying that person is the only one who can make the computer do the thing, whether it's invoke the implementing code through the call and declaration or actually perform the function of the program through the implementing code. I bet there is just one way to do it. Why is there just one way to do it? If you spent enough time and you had the most brilliant computer programmers, don't you think they could devise a system of calling up the Java program so it might be expensive to do and take a long time that didn't use the word java.lang.mat? Well, two things. First, why would we have a copyright system that does that with the only upshot of Oracle's rule that it wants you to adopt is to make computer programming incredibly inefficient so that we have fewer creative computer programs? The second is no. We actually do have very good computer programmers and when you use that instruction max.mat.java.lang the language itself it is a rule of the language that there is only one declaration that will work with it. That is a plain finding of the district court that is uncontested. Thank you. Justice Alito? Mr. Goldstein, I'm concerned that under your argument all computer code is at risk of losing protection under 102B. How do you square your position with Congress' express intent to provide protection for computer codes? Your Honor, I think that is a criticism that's been levied at our pure textualist argument about a method of operation but it is not a criticism I think that's fair of our argument about merger. Our argument is strictly limited in that sense to circumstances in which the function that is disclosed that is here the relationship between the calls and the declarations can only be written one way. It's a principle that Oracle concedes as I mentioned with respect to the implementing code that actually makes the shortcut programs work that produces, for example the larger of two numbers. There have been a lot of questions already about the merger argument but how do you respond to Oracle's argument that you are arguing in a circle that there is only one way to write a declaring code like Oracle did? That is not what we are trying to do. We are not Our analysis isn't circular. It is by reference to what the developers are trying to do. The developers it is conceded have a right to use the commands that they have learned in Java including the ones that work with Java SE. When the developers use those commands we have the right to write a computer that will respond to those commands. We would happily not reuse the Java SE declarations if we could. It is that the language only permits us to use those You could make the same circularity argument about the merger doctrine for anything in English because you could say every word in English if you get that specific is the only one that has that precise meaning. We haven't abandoned the merger doctrine. What we have said is if a work discloses something as Java SE discloses this relationship between calls and declarations then you have the right to perform that function unless somebody wants to go and get a patent. Let me switch to fair use. What should I do if I think that the purpose and character of the use and the effect on market value here weigh very heavily against you on the fair use issue that a jury couldn't reasonably find in your favor on those factors? You should recognize I think that those factors are continuums and so if you were to say well I do think notwithstanding the jury verdict that there was some market effect here and you have to check the box that there is a market effect what you have to recognize is that a jury looking at all the evidence could reasonably conclude that nonetheless the other fair use factors including importantly the fact that the original material here the declarations is barely creative and the fact that it unleashed millions of creative computer programs used by a billion people that on the whole it is not unreasonable for the jury to find fair use given that it was the jury's responsibility. Thank you. Justice Sotomayor? Counsel I go back to the essence of the questions that I think my colleagues are asking is how do you differentiate between declaring codes and implementing codes because you agree you agree that you couldn't have copied your implementing code because there are multiple ways of doing that but you fight the declaring codes because there are multiple ways of declaring as well. Apple has a different way of declaring the same functions they spent the billions of dollars necessary presumably you could have and yet you spend so much time in your brief convincing me that implementing and declaring codes go together in this hand they merge how do we draw the line? You don't it is actually Oracle that is trying to draw the distinction that you say is not recognized by the statute or common sense the legal principle that you can reuse computer codes that can only be written one way applies to both declaring codes and implementing codes Oracle concedes that if the implementing code could only be written one way we could reuse it it cannot explain why it is that given that the declaring code will not function if it is written another way we cannot reuse that they are trying to draw that line with respect to Apple it is true that Apple didn't reuse the Java SE declaration because it wasn't using Java it did reuse other declarations as the amicus brief that is why merger doesn't apply to something unique may I stop there that's the problem which is what gives you the right to use their original work what how do you define method of operations so that there is a clean line between that and when you have to create new code like implementing code sure so section 102B what it tells you is that you can't get a copyright in the functionality of a computer code and there are so many things listed in section 102B like method of operation because congress wanted to be encompassing you get to copyright none of the functionality it's the merger doctrine that tells us that if there is only one way to write the computer code that will provide that functionality then you can't get a copyright protection you have to get a patent protection with respect to the implementing code because there are numerous ways to write the implementing code as the district court found we wrote it millions of lines of it the only reason we reused the declaring code we couldn't write a computer program without reusing this limited set of instructions my problem with your argument is what is your definition of interoperability it seems one direction you seem to define it as the extent to which third party applications can run on your platform but not whether app develops on your platform can run on systems that use Java SE so it's one way so can people now copy you now have developed many different packages and platforms and things like that can they copy yours now they can copy any part of our code including certainly our interfaces our declarations that can only be written this way we have interoperability in the fact that the developers instructions work with our methods our classes and our packages it very frequently is the case that you have in modern computer programming interoperability that means you have a new software program that comes in and supplants an older less superior one one that doesn't work nearly as well that is actually incredibly important and what congress would want and that is to be able to take the computer mouse function to them on the other hand the smart phone doesn't have the computer mouse and it would be impracticable given the constraints of the smart phone justice Kagan I have to confess to being surprised or confused about some of the arguments you're making this morning and maybe it's just me and I don't understand it but I'm hoping you'll explain it to me because when I read your briefs I took you to be making a somewhat different argument principally than the one you're making today I took you to be saying that the declaring code is unprotected because it's a method of operation that it's what allows Java programmers to operate the computer and to be setting forth a pretty flat rule of that kind and I don't hear you saying that today instead I hear you saying the real question is are there multiple ways of doing the same thing so are those different arguments and which one are you making? They're both different arguments we're making both of them I'm focusing on merger the argument that you mentioned as our lead argument I don't think honestly is we do have a straight pure textualist argument that the declaring code is a method of operation because it is the instructions to the system  that's the argument that if you disagree with that and you believe that section 102B embodies only the idea expression dichotomy then you apply the merger doctrine and you say you can't copyright all the ways of having the method of operation and my point is that's what they're trying to do here. When you say, if that's your test that you're focusing on today, is that essentially the test that comes out of the second circuit case, is there any difference between what you are saying today and what all Ty says, which is essentially that we have to figure out how to separate out the expressive elements of something? The second circuit does have the abstraction test and an element of that test is that you take out the elements that are not subject to copyright protection and merger fits in there. That is one of the reasons that an element of a computer program would not receive copyright protection is the fact that it merges. It fits within the second circuit framework. It doesn't supplant it. If I could go back to something that the chief justice was asking about, suppose I'm sitting in a mathematics class and the professor says, do a proof of something or other. It turns out that 20 people in this mathematics class actually come up with more than one proof. Some are better than others. Some are elegant and some are less elegant. There are more than one ways of proving whatever proposition there is. How do we deal with that? I would think that that's pretty analogous to the situation here. They're more than one way and Oracle happened to come up with a particularly elegant one. It depends on what the it is. The computer program works in a very technical and specific way and that is someone, you're the developer, will type something into the computer. That person will put in particular information. The question is how is it that you're going to write a computer program that recognizes what they're going to say and responds appropriately. If you say you can get a copyright over the only computer code that will understand the proof, if there's only one computer program that will look at students' proofs and understand them, if you give someone a copyright on that, you've given them a patent on it because no one else can make a computer do that particular thing. Section 102B is not a copyright protection with respect to any method of operation. This is plainly the method of operating Java SE. Thank you, Mr. Goldstein. Justice Gorsuch? Good morning, Mr. Goldstein. If I understand the conversation so far, you are moving past rather rapidly the primary argument in your brief that the computer  should be copyrighted. I think that's probably a wise move given the fact that 101 says computer programs including statements or instructions in order to bring about a certain result may be copyrighted. We might not think otherwise that it should be, but there it is. Normally the specific instruction would govern the more general idea expression dichotomy. Am I right that we can move past that rather rapidly? Our main argument is the merger doctrine. I take that as a yes. I'll be honest with you. If we are moving straight on to the merger doctrine, there I guess I'm stuck in a similar place as Justice Kagan. The argument strikes me very much as I wish to share the facilities of a more successful rival because they come up with a particularly elegant or efficient or successful highly adopted solution in the marketplace and a ride on their innovation. What do we do about the fact that other competitors, Apple, Microsoft, have in fact been able to come up with phones that work just fine without engaging in this kind of copying? Everyone agrees that every platform does what we talk about, which is reimplement prior languages or prior platforms. Apple and Microsoft use different languages entirely. It's like saying we can't have merger in English because someone could write something in French. The rule that Oracle wants is something that has a real world analog in an exclusive right like a patent. What Congress said is that you can have the exclusive rights to the words on the page, the actual text, the text, the text, the text. If this was any trust law and an essential facility test, then perhaps. Section 102B tells us you can't have an exclusive right to inessential facilities. It doesn't say you can get a copyright with respect to a word. And others have been able to accomplish the task without reliance on what you might claim to be the essential facility. Where do we stand? We're misunderstanding what the task is. If the task is at a high level of generality, as you say, an idea of just being able to create a phone, fair enough. But that is not the test. The test is look at the actual copyrighted work and find its methods of operation. Inside there you will find this relationship between the declarations and the developer's command. That is something that you cannot get a copyright with. In any event, you would still look to the jury's verdict. Given that the jury heard the relationship between Java and Android and concluded that this was a fair use. Thank you. Justice Kavanaugh? Thank you, Mr. Chief Justice and good morning, Mr. Goldstein. To the other side and the solicitor general say that declaring code is a method of operation only in the same sense that computer programs as a whole are methods of operation and therefore your method of operation argument would swallow the protection for computer programs. Your response to that? Declaring code does something very distinct in computer code. It tells the outside developer what to do. The developer looks at the declaring code and then knows how to operate the shortcut prewritten programs. That is, it tells someone else how to operate the computer program. That is absolutely unlike any other code. On your merger argument, one concern that has come up that I want you to respond to is that it seems to define the relevant idea in terms of what you copy. You are not allowed to copy a song just because it is the only way to express that song. Why is that principle not at play here? Because we are not defining merger self reflectively. We are not saying I want to copy these declarations because I like these declarations. We are saying I have to reuse these declarations because I am trying to respond to commands from other people. The developers are writing something in just as prior hypothetical that I can write a computer program that does those things. It is in the sense of Baker versus Selden that if you have a copyrighted work and it shows the public how to do something, the public can do it. If they can only do it through using part of the copyrighted work, that part does not get copyright protection. One of the points in some of the amicus briefs, which have been enormously helpful, is that the sky will fall in essence if we rule against you in this case, threaten significant disruption. One question I had about that, though, is the federal circuit ruled in 2014, this court denied cert in 2015 on the first issue. I'm not aware that the sky has fallen in the last five or six years with that ruling on the books. I know it's different if we rule here, but can you respond to that? Absolutely. After the copyrightability ruling, it was entirely open that we would prevail on fair use, and we did. We won the fair use trial, and that went up to the federal circuit. When the federal circuit ruled against us, the court granted cert. I would not change the representations of the software industry itself. The premise is not in dispute. Interfaces have been reused for decades. It has always been the understanding that the glue that keeps us together has always been the      that we can do. We can do things that we can do. We can do things that we   can  Thank you. Thank you, Mr. Chief Justice, and may it please the court. Google's whole argument this morning is code is different. Now, a few basic legal principles and concessions control the outcome of this case. Legal principle one, Congress defined literary work to include the  of computer program. Google asks this court to carve out declaring code. Congress rejected the very carve out in multiple ways, including the definition of computer program, and by not including Google's carve out definition of computer program. This court held that a superseding use is always unfair as a matter of law. No court has found fair use or upheld a fair use verdict. A copy is copied so much valuable expression into a competing commercial platform.   not fair to Google and Microsoft to name the same thing and serve the same purpose as the original. Google conceded the purpose and meaning are the same. That's the end of question two. No one else thought that innovating required copying code without a license. Apple and Microsoft did not copy to create their platforms. Neither did others who wrote competing platforms in the Java language. There was and still is a huge market for declaring code. Other major companies like IBM and SAP were paying a lot of money to license just the same. Google never denied this. If this court holds that a jury may conclude that copying declaring code is fair, it will encourage copying, create legal uncertainty and decimate the business model which a lot of companies depend on. It will undermine the incentive copyright was designed to promote. Mr. Rosenkranz, let's say you want to open a restaurant. You have a great new chef and dishes and you say we have to figure out what the menu should look like. Of course you will have appetizers first and that's what is going on here. Every restaurant organizes its menu that way and you don't want to discourage people from opening it because they will have to spend their own time trying to figure out what the menu should look like. Why isn't that exactly what Google is saying here? This will be a  example. If you look at the menu, if it's a standard way of doing things, it is not protected. Or it's unoriginal by your own description. What we've got here is very different. It's not a menu just saying here are apps and here are dinner plates with standard descriptions that everyone uses of those apps and dinner plates. We filled the blanks in 30,000 times over and each item had its own description that no one else was using. You say they did have a choice. In other words, your work did not leave them with no option. What choice did they have without having to spend billions of dollars creating their competing platform? That's exactly what the Copyright Act requires.      because it would be expensive to recreate our expression. The Copyright Act does not give Google a pass just because it would be expensive to recreate our expression.  be expensive to create our expression. Mr. Goldstein says the best way to do it, the way to keep programmers doing new things rather than old things is to use Java. In no other context, would it be appropriate to be asking whether there's either fair use by saying that the audience has learned the words by heart? I mean, if someone wanted to write a book that preserved, that reproduced the 11,000 best lines of Seinfeld, they couldn't do it by claiming, but we had to do it because those are the lines that everyone knows. Thank you, counsel. Thank you, Justice Thomas. Yes, thank you, Mr. Chief Justice. Mr. Rosenkranz, in your brief, you seem to be arguing for more than the declaring code. If I'm right there, do we need to decide more than that? No, your honor. All this is based on the fact that the declaring code was original, it was, and for purposes of fair use, whether it was fair to copy the declaring code. Our point is that several justices made this morning, you can't distinguish declaring code from implementing code, but certainly not in the way that Congress defined the code. There's no principle distinction, and no distinction that courts are capable of drawing. Justice Breyer noted, code is code, declaring and implementing code both consist of words, numbers, or other numerical symbols within the definition of code. This is the exact line that Google proposed when it defined computer programs in section 101 as code to be used directly or indirectly to bring about a result. You argue that, you seem to argue in any case that Google's use was not transformative because the use of declaring code operates in Android the same way it operates in Java. What would in your way of thinking transformative look like in the context of computer code? In the context of computer code, the ninth circuit gave a great example of transformative use. The code was never used to show how the machine worked and that was a transformative use. In order to preserve the author's statutory right to create derivative works, this court held that transformative use must alter the original expression, meaning, or message. Google did not do that. It does not change the meaning and is no more transformative than adapting a short story into a movie. What Google did is the epitome of commercial superseding use. What Campbell describes is quote, using a work to get attention or to avoid the drudgery of working up something fresh. That's  we're doing. Thank you, counsel. Justice Breyer? Please assume with me the following. Assume that the computer programs which do something after all are copyrightable. But then it says methods of operation are not, whether they are computer programs or not. The problem for us is is this more like Baker v. Selden where they said the accounting is not. It's a method of operation or is it more like an ordinary computer program. Now, what I got out of reading through this, very good briefing, is look, Java's people divided the universe of tasks of which they are billions in a certain way. All the things that tell the computer to do one of those things will do. But that which tells the computer which to do, that's the declaration. Here's what it's like. It's like as Judge Boudin said, the keyboard. You didn't have to have a keyboard on typewriters at the beginning. My God, if you let somebody have a copyright, they would control all typewriters which has nothing to do with copyright. Or, it's like switchboard on old-fashioned telephone systems. You could have done it in a thousand ways. Once you did it, all the operators learned that system and you don't want to give a copyright holder a monopoly of telephone systems. Or, it's like, to use the Chief Justice's example, a chef who figures out brilliant ways of mixing spices and putting the spices for this and that in a certain order on a shelf and tells you which shelf to go to and which shelf to pick out. All those things are somewhat ordinary programs but they are giving you an instruction as to how to call up those programs that reflect Java's organization. At this point in time, it's really tough, just like the keyboard, to go backwards. Very bad consequences will flow if you don't see that distinction. Long question, but that's what I got out of their method of operation argument. I want you to say what you want about that. I'll answer your seven questions, I think, with  answers. The first is, this is not like the QWERTY keyboard. There was never anything expressive in QWERTY. Semi-LKJH doesn't mean anything to anyone. It was purely mechanical. That is true of all of your examples. You got right to the nub of it by asking about Baker. In Baker, the author published a book describing a bookkeeping system. He tried to block everyone else from using that system. His book did not attach leisure forms that were necessary to use the system. Baker's forms were not the same as Selden's, but Selden sued for  infringement because Baker's used Selden's system. They depicted debits and credits on a single page. This court said you can't use Selden's system. The jury returned a verdict on fair use and Oracle moved for judgment as a matter of law. Why wasn't the federal circuit required to apply the rule 50 standard and ask whether the evidence presented at trial would have been sufficient as a matter of law to justify  use of Selden's system? I'll first say that that is in fact what the federal circuit did. The court of appeals performed the no reasonable jury standard that Google urges. The court said no reasonable juror five times. Petition appendix 27 to 28, 42, 46, 51 and 52. Having found that factors one and four strongly favored Oracle and that Google's use was superseding, there was no other reasonable conclusion but that Google's use was an unfair use. I'll circle back to the first half of your question. The standard review is de novo by which I mean it respects the jury's findings of historical facts but then allows the courts as courts have been doing for decades usually on summary judgment to decide what legal conclusions to draw from those facts. De novo is the right standard because resolving fair use requires primarily legal work. In an area of law where stability is paramount and where precedence matters, their use cases typically turn on disputes about the legal standard. There are some mixed questions of fact and law that are submitted to juries. That is what was done here. Was that an error? I think what this court has done under fair use is de novo review. Harper was a de novo case. This court said explicitly that it was not sending it back to the district court to resolve anything. An appellate court may conclude as a matter of law that the challenged use does not qualify as fair use once it has the factual record and resolves all subsidiary factual questions in favor of the fact finder. There were numerous disputes including how you weigh various factors. I grant you that a lot of mixed questions are more factual but the stability that judicial review provides is essential for fair use because it has constitutional implications. Thank you, counsel. Justice Sotomayor. Counsel, in your beginning statement, you had the sky falling if we ruled in favor of Google. The problem with that argument for me is that it seems that since 1992 and justice Kagan mentioned the second circuit case, a ninth circuit case, an 11th circuit case, a first circuit case, that a basic principle has developed in the case law up until the federal circuit's decision. I know there was a third circuit decision earlier on in the 1980s. The other circuits moved away from that. They and the entire computer world have not tried to analogize computer codes to other methods of expression because it's too generous. They've looked at its functions and they've said the API, the application programming interface of which the declaring code is a part, is not copyrightable. Implementing codes are. And on that understanding, industries have built up around applications that know they can copy only what's necessary to run on the application but they have to change everything else. That's what Google did here. That's why it took less than 1% of the Java code. So I guess that's the way the world has run in every other ecosystem, whether it's Apple's desktop or Amazon's web services. Everybody knows that APIs are not declaring codes, are not copyrightable. Implementing codes are. So please explain to me why we should now upend what the industry has viewed as the copyrightable elements and has declared that some are methods of operation and some are expressions. Why should we change that understanding? I beg to differ with the understanding of the lower court cases. Not a single case has ever said that you can copy this vast amount of code into a competing platform to use for the same purpose. The third circuit, the first circuit, the ninth circuit, the tenth circuit, they all agree with that. No one drew that distinction between implementing code and declaring code. You will not find a single case that does this. Google is just wrong that the success of the software industry depends on unlicensed copying. Major corporate entities will pay a lot of money just to license our declaring code. Non-record examples that involved no copying at all, licensed copying, or copying of elements that were so uncreative that no one would say they were protectable. Thank you, counsel. Justice Kagan? Mr. Rosenkranz, as I understand it, there are two features of your declaring code that you think merit copyright. I want to make sure I'm right on this first. The first feature, and this is pretty basic, is that we need some way of connecting a programmer's inputs to implementing code. The second feature is that there needs to be a way to organize those inputs, those calls, into various classes and packages. One is like the trigger, and one is the method of organization. Is that right? Is that the thing that you're saying merits copyright? No, Your Honor. There are two things that we say merit copyright protection. The first is the manner in which we describe each function, each method. That is itself creative. Each line of declaring code actually teaches the user what that method does, how it's used, how it relates to others, and what the result will be. The second piece is the overall structure, sequence, and organization. Those are the two things. Okay, so let's start with that, the taxonomy, the structure, the organization, and we can, if we have time, get back to the other. I'll give you an example that's the same way. Suppose I own a grocery store, and I come up with a terrific way of organizing all my fresh produce into these categories and subcategories, very intuitive for the shopper. This is not the standard way. It's different from the chief justices hypothetical in that way. It's novel and great. And a rival grocery store, all rival grocery stores want to copy it. Do I have a copyright claim? You don't have a copyright claim in anything that doesn't sit down in writing. You're hypothesizing that you put down an outline form, the way of organizing. Maybe, I mean, there would be a lot of fair use questions about that, but this is worlds different. Why is it worlds different? There are all kinds of methods of organization in the world. Whether it's the keyboard or the periodic table or whether it's the system of kingdoms and classes and so forth that animals are organized into. There are a thousand ways of organizing things which the first person who developed them could have a copyright in them and prevent anybody else from using them. Two answers. First, let's not forget that the declaring code itself is enough volume to take up 600 pages in the joint appendix. So the declaring code itself gets protection. But the answer is the relationships of the methods, classes and packages, it's not just the most intricate hierarchy you've ever seen. If you look at one package on page 9, you will see it. And multiple pages of the supplemental appendix. But the relationships cross from one package to the next, from one class to the next. It is extraordinarily intricate in a way that does deserve copyright protection the same way the plot of a notebook does. Justice Gorsuch? Good morning, counsel. Your colleagues on the other side suggested the Federal Circuit did not give sufficient deference to the finding of fair use. I would like to follow up on that. Often, fact-specific questions like fair use that are multi-factor balancing kind of inquiries are reviewed for substantial evidence in the record. And that is not what the Federal Circuit here did. Particularly when the questions are kind of novel and legal rules have yet to crystallize and form around them. Why should the Federal Circuit not have used that traditional standard of review? Well, Your Honor, my first answer is the same as the answer to Justice Gorsuch. It actually did when it was conducting its analysis of those page numbers that I mentioned.  think that is the Federal Circuit's decision. Let's suppose I agree with you. I think you said elsewhere that it properly reviewed at DeNovo. Why shouldn't we remand the case for consideration of it under a more deferential standard review normally applied to jury findings and general verdicts? Well, Your Honor, this court certainly could if it believes that's not what the Federal Circuit did. But I would say in addition to the point I made earlier about the need for clear rules for the business, I would also say in terms of institutional confidence, this is a question that courts have all the time. If a court cannot grant summary judgment, granting summary judgment is what courts do all the time. Professor Beebe identifies over 100 fair use cases decided by courts on summary judgment in a 30 year time span. Google could find only five cases that even went to a jury in a similar 30 year span. Under Google's approach, summary judgment would be nearly impossible because weighing would be a fact question for every jury. Thank you, counsel.  Kavanaugh? Thank you, Chief Justice, and welcome back, Mr. Rosenkranz. I just want you to follow up on two of my colleagues' questions. First, any more you want to say about Justice Breyer's QWERTY keyboard question, and second, Justice Sotomayor's question about settled expectations and I would add the 83 computer scientists' concern about threatening significant disruption. If you could follow up on those two, and I have no further questions after that. Thank you, Chief Justice Kavanaugh. Let me just finish the answer on Baker. I was saying that this case would be like Baker if we were trying to block others from using their own package class method structure to organize their own prewritten programs, but Sun wrote its own specific package structure to organize their own prewritten programs. However, they see fit as long as they don't copy ours. And to answer the second half about settled expectations, and we heard dire predictions from Google about the future of software innovation, but two different administrations would not be supporting us if our position were a threat to innovation. The software industry rose to world dominance since the 1980s because of copyright protection, not unlicensed copying. As you pointed out earlier, the sky hasn't fallen in six years since the first decision that brought new bursts of innovation and interoperability. In that time frame, we've seen the explosion of interoperability, cloud computing, 5G, machine learning, and autonomous vehicles. I can tell you two things that will kill software innovation. The first is change the rules under which the industry has thrived for 40 years and substitute a rule that what is fair to copy is what every jury decides as a matter of public policy. And the second is take away the incentive to write original code. Thank you, counsel. You want to take a minute to answer that. Let me just say two things. The first is that ruling for Google will decimate the incentive to create high-quality user-facing declaring code. The code that the amici on both sides insist is essential for the industry to survive. That will hurt app developers and the industry in the long run because who will invest the excruciating time it takes to refine code from the passible to the masterful if all of it can be stolen. Big companies are paying lots of money right now to license declaring code. It's not true that they're all paying for nothing because it's all unprotected. The whole market will be gone with the stroke of a pen. Congress passed the copyright act to further the long-term incentive to create. Not short-term expedience to copy. Ruling for Google will also destabilize copyright law. Our rule protects original code. It's a simple rule. It comports with traditional copyright principles. Google's rule that code can be copied whenever necessary for a user to bring about a result is poorly defined and will deem courts and the industry to decades of uncertainty. Thank you, counsel. Mr. Stewart. Thank you, Mr. Chief Justice. In the mid-1970s Congress established the national commission to study problems related to copyright law and computer code. In 1978 the commission issued its report. It recommended that computer code continue to be eligible for copyright protection. The central justification it gave was that computer code is much more expensive to draft than it is to copy. Consequently, if potential authors of  code were to be copied there would be a disincentive to creation. It's the preservation of those economic incentives to create that is the core justification for having copyright protection in the first place. Here Google's core argument is that once the app developers have learned the calls it would be inefficient to make them learn new calls in order to invoke new declarations. In a wide variety of circumstances once a work has been created if you focus exclusively on that work it will often seem more efficient to allow indiscriminate copying. Mr. Stewart, you represent the United States of course and we're told that if we agree with Oracle we'll ruin the tech industry in the United States. Why is that not true? Why is that not true? I give three or four reasons. The first has been explored already that the Federal Circuit issued its copyrightability opinion in 2014 and we haven't seen deleterious effects from that. The second is that the briefs talk about the practice of copying interfaces or APIs but those terms are very common. The third reason is that there's a prevalent practice of licensed copying of      called open source licensing. One way to do that is to have a license copy of the declarations and have a license copy  declarations. The only way it can be done is that the copyright holder can simply announce to the world you are free to copy this code as long as you comply with the following conditions. Thank you Mr. Stewart. Justice Thomas? Thank you Chief Attorney. I think it's very common that there can be disputed questions both of fact and law. Even when the questions of law are close and reasonable judges could disagree, the district court is supposed to say what is the right answer to those legal questions. When we ask could a reasonable jury have found fair use here, we should be asking could a reasonable jury have found fair use. We assume that the jury made the factual findings that are most favorable to Google, but then we ask what is the right answer? Was this transformative? I think that's the way the federal circuit did it.   circuit said we'll assume the facts in Google's favor, but then we'll determine whether this is transformative as a matter of law. That's the way the court did it. That was a bench trial, but there's no reason that a resolution of questions like was this transformative should be given greater weight than the view of a district court with respect to the same questions. One final question, Congress has provided four factors, and we've said that those were non-exhaustive. Can you think of anything else that should be added in that analysis? I can't think of anything else. There may be other factors in particular cases. The only thing I would emphasize is that in deciding questions of their use, the court shouldn't just be asking how would consumers potentially benefit from widespread copying with respect to this particular work, the court should also be asking what incentives to future innovation would a particular sort create. Thank you. Justice Breyer? I'm curious as to why the government thinks the balance of harms lies the way you do. I do think of the QWERTY keyboard. The QWERTY keyboard calls up the metal rods that make an impression on a piece of paper and then that's how you write words. This system calls up a system of dividing the world into a variety of tasks, which then will be done. Now, nothing in copyright is meant to give the owner of the QWERTY, whoever thought of that beginning, a monopoly of typewriting. And nothing here, they say, if in fact you give them a monopoly of this, the millions of people who have learned this, as Justice Sotomayor says, will have to spend vast amounts of money when we get all kinds of new methods for using computers, turning on heaters, stoves, et cetera, and a monopoly of the owner of the declaration, monopoly power over all those uses. Now, that, I think, is roughly what they're arguing. Why does the government reject that? Well, I think there are all sorts of things like the QWERTY keyboard that have become standard, but that wouldn't have been the case in the first place. The second thing is when we talk about the people who will      declarations, we're not talking about consumers. We're talking about the people who will have to learn new calls in order to invoke the declarations. We're not talking about the people who actually use the smartphones. We're talking about app developers. These are economic actors. Their interests happen to align with Google's because if they can create popular apps, the app developers will gain money and Google will gain advertising revenue because the Android platform will gain advertising revenue. There's been some elaboration on it. Obviously, there's this argument that the sky is going to fall if we do not rule for Google. Unless you have anything you want to add on that point? The only thing I would push out a little bit was the last point I got at the end. There is this phenomenon of license copying. The license terms don't include the payment of money. They include a requirement like whatever improvements to the code you make have to be given back to the programming community. The copyright holder's authority to enforce those licenses depends upon the proposition that the code is copyrightable to begin with. Those licenses would be a pointless gesture otherwise. The very fact that those licenses are offered with such frequency tends to dispel the idea that there is a common understanding in the relevant community that this material is not copyrightable at all. Thank you. Counsel, could you tell me why you think that Google's work was not transformative? It moved Java's platform from a PC essentially to mobile phones. Why wasn't that a transformative step? I mean, the answer is that all fair use involves copying. So to do fair use, you have to copy something and create something new from it. So why wasn't that a giant step of fair use? I guess I'd say three or four things as to why this wasn't transformative. The first is when Google explains why it copied these declarations, these are the functionalities that will carry over to a smartphone platform. These are the declarations that will be useful in the new technological environment. So even though a lot of the code that Oracle had written might not be useful, this code is. The second thing is when they copy   that they copied, that's the only way to make that. What they copied in terms of the declaring code was only that that would function in the new environment. It's not the only way they could do it. They're very careful about this. It's the only way that would allow the app developers to use the pre-existing calls in order to call up the established methods. The second thing is that whole argument about allowing app developers to use their knowledge. The only way it works is that app developers can have the same functionality that it has triggered on the Java platform. It's not transformative in that sense. The code is performing the same function that it performed on Java. The third thing is if you imagine a motion picture that has only been released in theaters and somebody gets the print and offers to print it, it's going to be used on a different platform. No one would think of that as transformative. Justice Kagan? Suppose I come up  new and useful keyboard. It's so useful that everybody starts using it. Let's assume for the purposes of my question that this is a smartphone manufacturer that takes that layout, takes that keyboard, and uses it for its next phone. Is that fair use and why or why not? The fair use analysis would depend on a lot of factors. In fair use analysis, you could take into account developing expectations, concerns about interoperability. We're assuming for these purposes as you asked that this is copyrightable. That would be a factor to consider in fair use analysis. We don't have a quarrel with the proposition that observing interoperability can be a favorite purpose for fair use analysis. Why is it any different here? In other words, Google took Java's interface so the programmers wouldn't have to learn a whole new system for coding just as the cell phone manufacturer took my keyboard so people could rely on something familiar. One of the differences is the app developers are in a fundamentally different position from the consumers, the smartphone users. If Google had tasked its own employees with creating new apps so the Android platform would become more popular to consumers, nobody would think the desire to make it easier on those employees by not requiring them to learn new calls would be a basis for finding fair use. That's a paradigmatic example of copying in order to avoid the drudgery of working up something new. The analysis shouldn't be different simply because the app developers are independent economic actors whose interests happen to align with Google's rather than Google employees. Thank you, counsel. Justice Gorsuch. Mr. Stewart, the government concedes that this work is copyrightable but then says the fair use analysis has to permit the copying here. I wonder whether it gives us one hand and takes away with another. The fair use analysis, four incommensurable factors that need to be weighed, why could no reasonable jury have said yes, code is copyrightable but it's always subject to fair use. We're saying it's subject to fair use analysis but we argued it was not fair. The reason we think the error we think the district court made was that it treated as a factual question what it should have treated as a factual question. Oracle argued this is transformative because it's being used in a new platform. Oracle argued it's the same code being used for the same purposes. The district court didn't decide which was right. It said a reasonable jury could have sided with Google. That would be fine if it was a factual determination. But the question is that sufficient to make for a transformative use is a legal question. The court appropriately reviewed that and found it was not transformative. If we disagree with you on the standard of review that should apply here, what should we do? I think if you disagreed and thought that questions about is this transformative or not given a stable body of facts, if you think that is a question to refer to, a remand is the appropriate course. That will affect summary judgment practice. A lot of questions are decided on summary judgment. That won't be possible any longer if issues like putting it on a new platform are regarded as jury questions. Thank you, counsel. Justice Kavanaugh? Thank you, Chief Justice. Good morning, Mr. Stewart. One question on merger doctrine and one question on method of operation. First, Google says in its reply brief that the dispositive undisputed rule of law is that the declarations cannot be written in any other way and still properly respond to the calls used by Java programmers. Are they wrong in saying that? I don't think they're wrong in saying that, but that argument is circular. They're invoking the law and implementing code in response to calls that are known to developers. That's wrong for two or three reasons. The first is section 302A says copyright protection subsists from the work's creation. At the time the work was created, there were no calls known to developers. The argument wouldn't have flown as a justification for copying at that time. The second is as the chief justice pointed out in an earlier part of the argument, that would effectively penalize Oracle for its marketplace success. The fact that the calls were well-known was simply a function of the fact that the Java platform was popular and a lot of people had written a lot of apps for it. And the method of operation, Google says that the declarations are a method of operation because they're for the developers to use while the implementing code is for  developers to use. I think the term method of operation comes from Baker versus Selden. It was a long list of examples of if you write a book about how to do a useful task, you can get a copyright on the book but no exclusive rights in the performance of the task. And the court said a mathematician who wrote a treatise couldn't get an exclusive right to his methods of operation. The report discussed the way it would apply to computer code. I think the clearest expression was on page 21 of the report where it said one, it's always free to make the machine do the task.  always free to have the copyrighted work placed in it. Mr. Stewart, if you'd like to take a minute to wrap up. Thank you, Mr. Chief Justice. The fundamental line that should be drawn for purposes of merger analysis for purposes of 102B is if a particular line of code is not copyrightable, it's undisputed that Google could have written new declarations and they could have been used to invoke the relevant methods so long as the developers were willing to learn new calls. Analyzing the case that way gives appropriate weight to the copyright policy of creating adequate incentives for the creation of new works of authorship. Thank you, Mr. Chief Justice. Thank you. Mr. Goldstein, to even out the time a little bit here, I think we'll go through another round of questioning for you if that's all right. Thank you, Mr. Chief Justice. I'll start. I wonder if you had any further response to Mr. Stewart's representation about the effects of the technology market if we rule in favor of Oracle. Yes, Mr. Chief Justice. I don't think that Mr. Stewart is accurately reflecting how the industry operates. You have briefs from the country's leading computer scientists and the software industry that say that the non-licensed re-implementation of interfaces is widespread. That's the concern about decimating how the industry operates. I would pay close attention to the wisdom of what he says when he says categorical rules in this area are bad in response to your question about how would this play out with other kinds of interfaces. There are lots of factors involved. That's why deferring to the jury's fair use verdict, which is fact-bound in the case, is a perfectly appropriate and sensible way to resolve the case. I wonder if you wanted to take a bit more time to respond further to my question about why your merger argument doesn't make Sun and Oracle a victim of its own success. Mr. Rosenkranz mentioned that several tech companies did in fact find a way to develop their programs without relying on the job of coding. So why shouldn't we impose that same obligation on Oracle? Well, that wasn't, of course, resolved whether we had the fair use right to reuse the code, but in any event, I think that's an optical illusion. The computer scientist brief at page 18, the Microsoft brief at 14, explained that both Apple and Microsoft, Oracle's examples, did re-implement prior interfaces. The reason that they didn't use these interfaces is they were using a different language as if they were writing in French rather than English. Oracle does not get to claim that exclusive right to a highly functional computer program without a patent. It gets to claim the words on the page, and if those are the only words on the page that will produce this result in the computer, they don't get that exclusive copyright. Justice Thomas, do you have further questions? I have no further questions, Chief Justice. Justice Breyer? I've heard from the other side that, yes, that may be true, but this result is simply calling off a set of programs that were written by Java. And maybe at the beginning you could have done this in different ways with different divisions of tasks in the world with different call-up numbers, and there weren't people trained at that time, and copyright, you just heard quoted, runs from the beginning. What do you do about that? Fair use certainly runs from the end. I'm not talking about fair use. I'm talking about your merger argument and let's say the method of operation argument. Sure. So there's a difference between the fact that they have a copyrighted work which ran from the point of publication, from whether merger applies. This is Baker v. Selden. Selden, when he published his book of dual column accounting, on that day he was the person who had created that, but the  work was not available, and that meant that there's no copyright protection within the copyrighted work for that particular piece of expression. Thank you. Justice Alito? No further questions. Justice Sotomayor? Mr. Goldstein, is this your answer to Mr. Malcolm's transformative use argument, and what's your best argument on fair use? Our answer with respect to fair use is that it cannot be that transformative use only exists when computer code does something different. Computer code only does one thing. There is no parity of computer code. That would mean, ironically, that this highly infunctional expression is less susceptible of fair use than a highly creative novel. That cannot be right, and in any event, even if the jury was entitled to conclude based on the record evidence, that this was an entirely new context, that Java SE was not usable in a smartphone. With respect to fair use more broadly, our best argument is about the standard of review. Under rule 39C, this does not provide legal guidance. That's why we have jury instructions. This is incredibly fact-bound. It will depend on the circumstances. In that context, you cannot say that the jury couldn't reasonably find that this massive creativity with a million applications and a huge    effort was necessary. Thank you. Thank you, counsel. Justice Kagan. I'm wondering, Mr. Goldstein, what is the first part of the answer you gave to Justice Sotomayor, whether transformative use is not the right question here, although it is in other contexts? As I understand it, you're using this for the exact same purpose. It's just that the purpose to make sure that users are dealing with a familiar interface is one that should favor fair use. Is that right? Is the purpose of    sure that users are dealing with a familiar interface? Is it the right answer? And then you ask, well, what comes of it? What is the nature of this use? Are we using it on a desktop computer anymore? No, we're using it in an entirely different environment. The nature of the use here is quite significantly different from the original use. I think that's the statutory question. Is it fair use? Thank you, Mr. Goldstein. Just to follow up on that, Mr. Stewart argued that if we were to uphold the jury verdict or send it back, unfair use, that we would be negatively impacting summary judgment practice and that most district courts take these questions up as a matter of law and summary judgment. Yes, this is the exact argument that was made in the court's financial decision and that is, sure, some issues are decided frequently on summary judgment but that doesn't mean that there aren't other highly contested cases that arise in new environments. This is that kind of case. It went to the jury under rule 39C. The fact that Oracle didn't move for summary judgment in this case, when you have such a case, isn't a license to throw out the actual standard of review that applies. Courts have had no problem reaching summary judgment where it is appropriate because generally there you don't have anything like a factual fight. Did Android supplant Java SE in the marketplace? How is it that they were technically different? Classical fair use cases are things like parodies or news reporting in which we have established legal rules. Mr. Stewart is asking about the merger doctrine. I wanted to see if you had anything further you wanted to add on the merger doctrine to help us understand that. Mr. Stewart's answer is that we are asking the wrong question. He agrees that the only way to respond to these developers' calls is with these instructions. That's a very important point. His point is, well, so what? The developers can write other calls. That is a way of saying that we can use a different method of operation. It also is nonsensical as a matter of copyright law. Why would Congress want a rule that says, okay, these developers are extremely familiar with these commands. Let's just make it as inefficient as possible for them. It's not trying to create a fan base. It's trying to create a set of prisoners. That is not a right that you can get from copyright law that Congress would want to confirm. Thank you, Mr. Goldstein. Mr. Goldstein, you have three minutes left if you want to shift to rebuttal. Thank you, Mr. Chief Justice. I do want to focus on the question of fair use. I do think that Mr. Stewart's argument that      the evidence at the trial is certainly sufficient to reasonably conclude that there was fair use. Thank you. Thank you, Mr. Goldstein, Mr. Rosenkranz, Mr. Stewart. The case is submitted.